Please rise, this court is now in session. Please be seated. 315-0879, Peter P. Illinois, up front, by Richard Leonard v. Thomas Williams, deputy, by Ted King. Mr. Leonard? Please sit, court, counsel. On February 7, 2016, at about 3 a.m., Officer Corey Quisrow, he rose of the Palos Hills Police Department, was traveling home after his shift. He was a Palos Hills police officer, but he lived in Lac Court. He was driving an unmarked car. Well, I think we're all familiar with the facts. What are the issues here? Okay, the issues here is whether the trial judge erred when he granted the defendant's motion to suppress. Of course, we have the two-fold standard here. The first argued that the trial judge's decision, finding that the police officer would not have known that the offense had occurred if he had not used the radar gun, was against the manifest with the evidence. That was only one offense. The offense that occurred here, which brought the officer's attention to the defendant's vehicle, was driving on the wrong side of the road and forcing the officer to take evasive action from hitting the officer's vehicle. So the facts are clear here that the defendant committed improper lane usage and was driving recklessly, and the radar gun had nothing to do with these two offenses. Was he charged with that? He was charged with driving 60 miles an hour at a 25 mile an hour speed zone. All based on evidence taken from an out-of-jurisdiction police officer using police equipment, correct? Correct. Okay. And was he charged with improper lane usage? He was not. I see. He was charged with DUI. After the officer turned around, he followed the defendant to his residence. At the same time, he used his personal cell phone to call the 911 operator and report the address where the vehicle had stopped. He got out of his vehicle, which he parked on the street along the curb. He was in uniform, but he had just gotten out. Once again, we've got the facts here. What's the law on this issue and where did the trial judge go wrong? Okay. Well, the trial judge went wrong by suppressing the DUI offense because the radar had nothing to do with that offense. First, that was against the manifest way of the evidence. I argued in my brief that, yes, the officer used his radar to clock the defendant, and he received this speeding ticket that should be dismissed, this speeding ticket, but that had nothing to do with the DUI. He should affirm or reverse the trial judge's order because that's against the manifest way of the evidence. Second is the more crucial issue, whether this officer made a valid citizen's arrest under Section 107-3. That section is codified regarding citizen's arrest. Any person may arrest another when he has reasonable grounds to believe that an offense other than an ordinance violation has been committed. Reasonable grounds here is similar to probable cause. Here the officer did not use anything of his office to stop the defendant. We believe that this was a valid officer's citizen's arrest. Just because he's an officer, he's still a citizen. He talked to the defendant.  He told the defendant he almost ran him off the road. He had a conversation with the defendant, told the defendant, stay right here, the Lackport Police Department is coming to speak with you, and the defendant voluntarily stayed there. Is there any problem with the colloquy he had with the defendant in regard to asking about his license? No, he was making small talk with the defendant. He asked him if he did have a license. He didn't ask to see his license, but the defendant was very helpful and cooperative. He gave him his license anyway. Yes, he had been drinking. The defendant said he had been in a car and he had been drinking. But other than that, the officer did not go into any more detail. He was simply holding the defendant there as a valid citizen's arrest until the Lackport Police Department came and investigated the issue. A few minutes later, the Lackport police did arrive and took over the investigation. The officer found out that the defendant was then charged with DUI. So the trial judge mostly focused on the use of the radar gun. Well, that was okay for the speeding ticket. I agree with that. But with the DUI, under these facts, I believe that this was a valid citizen's arrest. The officer did not use the powers of his office to force the defendant to stay where he was. The defendant did stay. He didn't have to stay. So I would ask that this court reverse and remand the cause for further proceedings because under these facts, this was a valid citizen's arrest. Well, if it's a valid citizen's arrest, implicit in the concept of arrest is that you compel somebody to stay where they're at until the police get there. Yes. Even if the officer said, you're not leaving, I mean a citizen could do that. Hey, you're under arrest. I'm a citizen. You're under arrest. You've got to stay here. Yes. So whether he compelled him to stay there is really not an issue, isn't it? It is not an issue.  he considered the defendant not free to leave. He did seize the defendant. Under these facts, we believe that that falls under the statute for a valid citizen's arrest. The only power of his office that he did use was the radar detector, and that had no bearing on the other offenses like the DUI. That's all. Thank you, Mr. Ealy. Mr. Hamel. Justices, counsel, I'll stand here if that's all right. Or sit, whatever. I'm a little full of energy, Justices. That's all right. I'll stand. The circuit court is in a better position to determine witnesses' demeanor, and there's only one witness in this case, the officer, and how they present themselves in testimony. In this case, like I said, there was just one officer who said he left his radar on. From the court's perspective, he left his radar on. After the radar issue is when he testifies about improper land usages, etc., pulls over on the side of the road. When the court had trouble, what I read through in the court had trouble with grappling is the sense that there was a citation issued for speeding, although that's not evidence in and of itself. The citation isn't. But all the citations were issued, and you would think with a citizen's arrest it would be the exact opposite. There would be citations issued. Can you say that again? Was there a citation issued for speeding? There was a citation issued for speeding. It was. . . What happened to that? I'm sorry, what? What happened to it? Was it prosecuted? I think in the state's brief, they suggested that that citation should be dismissed. Okay. Based upon the extraterritorial nature of it. And I did see that in the brief that they suggested that that citation be dismissed, in and of itself having a citation issued. Yet they acknowledge it must dismiss the speeding citation pursuant to the holding in law. But that citation is not dispositive of whether or not. . . It's not evidence in the case, just because a citation is issued. That's the first thing they say in any jury trial, is a complaint issued, not evidence. But here they think if there was a citizen's arrest, wouldn't you have the other citations issued as well? Well, what's all this got to do with suppressing the DUI arrest? Well, from what the court stated, it couldn't get around the fact that in the court's determination. . . Again, I wasn't the trial attorney on this, but in the court's determination, the stop was solely predicated, it appeared, as the speeding citation and not the improper language. He put more weight on that. He didn't. . . There was a lot of argument back and forth with the trial judge and the state's attorneys as to whether or not the citation was evidence or not. Well, this was a 25 mile an hour speed zone, right? 20 or 25 mile an hour. They said it was 25 to 60 in a 25. Clearly. . . And you think it's fair to say that even a layman, a 60-year-old kid can tell the difference between a car going 25 and a 60? Somebody can tell the difference definitely of maybe 25 to 60, but I would say seeing it vertically, but not coming at one. . . I think they were coming at each other, which is a little different for the average layperson, seeing somebody coming at you at a high rate of speed, trying to gauge what that speed is instead of going in front of you left to right. I think it would be a little bit different, but yeah, a person can see if somebody's going fast and maybe not necessarily 25 miles an hour. Let's put the facts together. We have a 3 a.m. incident where a person, a motorist, who just happens to be an off-duty policeman, still in uniform and in an unmarked car, is driving in his lane properly. I think that can be inferred from the testimony that was directed. In fact, it was the case. And there is a car exceeding the speed limit, the 20-mile-an-hour speed limit, which you've admitted a layperson can tell you can determine that's an excessive amount of speed, coming forward outside of the lane, coming toward the driver of the other car, the officer, who has to take evasive action. The totality of that would suggest that most ordinary people, 3 a.m. in the morning, this person is out of control, perhaps because of drug usage, alcohol usage, or just dangerous driving. Is that sufficient for a citizen to make a citizen's arrest? As I said, Justice, again, coming towards one, I don't know if somebody can actually tell if it was a criminal case of speeding over 25, but they can surely tell if somebody is coming towards them at a high rate of speed. Is it also an offense to be driving outside of your lane? Driving outside of one's lane? Obviously, but I think what the judge did in the trial court, as he stated, he found that he was making the conclusion that he put more weight in the fact that the officer was relying solely on the speeding ticket, to the point of, I would say, he almost discounted the credibility of the other testimony. And that's what I found through it, whether or not that's accurate or not. That's what I found through it, that he said, you know, you're stopping him for speeding. Can I interrupt you there? He keeps saying you're stopping him for speeding. Didn't this driver pull over on his own? There were no red lights. There was no force used by the officer. I mean, he did make observations, looked down at the radar. Did he stop this driver? Well, in the transcript, it does say that he did approach him and he asked him for his driver's license. The driver pulled off the roadway and parked the car? Correct, you are correct. And do you think the officer would have approached if the driver stayed in the car? In my opinion, humble opinion, would I think the officer would approach? Yes, if he stayed in the car. Why isn't this just a simple parry stop? Just maintain the status quo. He's already called the other jurisdiction. He approaches the guy, engages him in a conversation. Why isn't it just a parry stop to ascertain the identity of the driver, much like we had a Whiteside County case. What was the name of the case? Where the officer approached the car, identified the driver, and then, you know, allowed him to go out. But that's perfectly acceptable. It's not an arrest. I think the court predicated on the sole basis for approaching the vehicle and talking to the defendant was the fact that the speeding and not necessarily the other testimony that it alluded to of improper land usage and driving in his lane. Or as they put in the transcript... Did he put him under arrest for speeding? I'm sorry, what? Did he arrest him for speeding? Was there no formal, you are arrested for speeding? No. He never said the magic words? He didn't say the magic words. What's your name? Have you got a driver's license? Do you want to wait here? Why is that an arrest and not a simple parry arrest? Let me answer that with an analogy. If the officer just stayed in his vehicle and waited for the police to arrive, obviously he's not going anywhere. He's stopped. Not by the officer, but he's stopped. If he just waited in his vehicle for the Lockport police to arrive and not ask for a driver's license, not talk to him about, I think it was a question about consumption of alcohol and who lives here, it may have been different, but that didn't happen. He did approach, and he said, he inferred to him, the officer said, yeah, I kind of inferred to him he was not free to leave and he had to wait here until Lockport arrived, and he asked him for his driver's license. He said, do you have a driver's license? Something to that effect, and the person gave it to him. Who arrested him for DUI? The ultimate arresting for DUI was done by Lockport. So why wasn't he placed under arrest by Lockport? I mean, that was authorized, correct? Again, if he goes back to, was he stopped for improper lane use, was he stopped for reckless driving, or was he stopped for speeding? As the trial court was inferring from its arguments with the state, the trial court... And the point in time for the stop, according to your view of the evidence, is when the officer stopped him in the driveway. In the driveway, and for me it was a point of, when he radared him, he made a determination that he was going to stop him because he, and to me it was extraterritorial, he radared him, radar or laydard, at 60 in the 25, and then at that point in time, in my opinion, he stopped and turned around and followed him and was going to eventually apprehend him. Well, if he intended to stop him, why didn't he activate the oscillating lights in the unmarked car? The oscillating lights were not activated in the car, or so the testimony went, that they were not activated in the car. That's correct. But the way he did it afterwards, getting out of the vehicle and approaching, I guess I would accept that other viewpoint of an argument much further if he just sat there. Well, let me ask you this. What about, does this, taking the officer's testimony as true, does his conduct shock you? Do you find it like, this is horrible, what he did? Well, horrible in the sense of walking. Well, it would be shocking, you know, but we don't want cops doing this, this is awful. Police shouldn't be doing this. Inferring that he should not leave and asking for his license instead of waiting there. Yeah, you find that, this is police... Because I can see that... If somebody's got to do something about this, these police can see people speeding and swerving around the little lane and actually following them and detaining them. Is this something that you find shocks your sensibility? In my sense of today, when it's somebody from a completely different county asking for a license and insurance, to me it would. You don't. So if somebody's ripping... Do you have kids? Anybody ripping through your neighborhood at 16 and a 20 and you'd be shocked and offended if a police officer from another jurisdiction stopped them? Well, if he... Now, Aaron, that's 16 and a 20 and that would change the facts because, again, I would be seeing him broadside. And I would agree, going through my neighborhood, I would agree that would be shocking and if an officer was there I'd want him to stop him, extraterritorial or not. Well, I guess where I'm going with this is more recently the United States Supreme Court has said, look, the exclusionary rule is meant for not every little technicality but to the purpose of the exclusionary rule is to try to deter a police conduct that is shocking and just got to stop and not for every little... You know, you didn't dot this I or cross this T or we're going to suppress relevant evidence. And the United States Supreme Court has recently said, you know, this is not the purpose of the exclusionary rule. And so, I guess what I'm wondering is even if we only have radar and not other observations, would suppress it? Do you really think suppressing the DUI evidence is an appropriate use or an intended use of the exclusionary rule? To your analogy, if it was just for the radar and nothing else, yes, because it was extraterritorial. And because that's shocking to the community, you would be shocked by that type of conduct by police officers. Yes, because you, to me, you'd wind up with a lot of extraterritorial investigations that they should be... People ripping through neighborhoods that triple the speed limit and veering across and you don't want off-duty police officers doing anything about that. Well, I'm not limited to that, Justice. I'm just saying that there could be other things that they would submit them to, not submit themselves to, but take an interest in, which is really that they shouldn't be doing extraterritorially. I mean, in your analogy, I would not limit it to just speeding through a neighborhood. I would say that eventually it would be expanded to other things and you'd have police officers doing extraterritorial things. Well, you know, when is a police officer a police officer? When is a police... When is a person of an occupation a citizen? Okay? I mean, I'm kind of confused by this. I mean, you know, he has to work at a job called being a policeman. He's also a citizen. You're a lawyer, but you're also a citizen. Is there a provision for a citizen's arrest? There is a provision for a citizen's arrest. Okay, so what's the status of this individual at the time that he said, I've called the Lockport Police Department, don't leave? In my humble opinion, I believe that he's acting of the color of authority when he used the radar and not stopped. Well, you have testimony here, unless your only legal argument seems to me is that you can say the record allows a reasonable inference that the trial judge found him to be less than credible when he described the incidents of crossing the lane, having to take evasive action, because the guy's barreling down on him. Okay? Yes. That's a legal argument. And does that record support that? Well, one thing I was going to ask is not exactly as to the questions regarding improper lane usage, but just as to, for example, as to just IDing the defendant, he was not, you know, his answer was, it was dark. If I saw him outside, I wouldn't be able to recognize him, but that's the defendant. And he did make an in-court identification. Yes, in a roundabout way, I guess that was. But with that, and I saw that in there as like a real roundabout way, and then you have questions as, you know, if he didn't, if he just stood in the driveway and didn't approach him, I would say the court has much more, the trial court would have much more going forward. But when he says this and the trial court observed his demeanor, his testimony, and obviously observed that statement as to an in-court identification, which weighs heavily, then I would leave it to the discretion of the trial court as to his finding. Because, like I said, I was not there, and it's very tough to get that inference from a transcript. It is very difficult. On the suppression of evidence, isn't there a standard review to know about? If, I believe that all the facts are taken, versus whether or not it's against the, there's a first part to the test as to the evidence taken, I guess, if it's against the manifest weight of evidence, and then it's the de novo evidence applied to the law. Well, did the trial judge say, I don't believe this officer when he said he independently determined of the radar that the guy was speeding as opposed to 62, as opposed to he's going way too fast, or, and the lenses, did the judge ever say, look, I'm not buying that? Well, I think he just, I quoted in my brief that he predicated the stuff on the use of the radar, and as a result, it would not support the state's position. I think he was going in a roundabout way of being polite, but I can't read his mind as to what, and he did not say, for reasons beyond the term of the magic words that the court is eliciting, because I did not read that in the transcript. Was there any testimony that rebutted the officer's testimony about the lane usage and the speed? No, I think that, I mean, I think he was the only one who was testifying, and once that, again, that was the trial judge's continued retort was that, well, wouldn't it make more sense if he was not acting on the color of a badge to have those other citations issued instead of having a citation for speeding with a radar issued by Lockwood? Well, you never issued any citations. No, as I'm not, wouldn't it, to me, it would have made more sense had the opposite occurred, but it didn't. But with that, I'd ask you to affirm the trial judge's decision. Thank you, Mr. Hamill. Mr. Leonard, any rebuttal? Just a summary of my argument. The facts are clear. First, I submit that the trial judge's finding that this stop was predicated on the radar gun, use of the radar gun was against the manifest word of the evidence. And also, the de novo review that the motion to suppress was wrongly granted based on these facts. The trial, the officer did not do everything right to make a citizen's arrest. He was acting as a citizen. He said, he didn't say, I'm an officer. He didn't have to. Of course, he saw the uniform, but he made small talk, kept the guy there while the Lackport police came. This is something we want to encourage officers to do. We don't want to punish them. This guy was driving recklessly, speeding, arrested for DUI, and based on all the facts and the trial judge's finding, I ask that you reverse that finding and affirm, reverse the finding and remand for further proceedings. Okay. Thank you, Mr. Leonard, Mr. Hamill, thank you. We'll take this matter under advisement that this position will be issued. Right now, we'll be in a brief recess for a penalty.